# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

JACQUELINE STRUCK,

    Plaintiff,

v.                                        Case No: 2:19-cv-598-FtM-38NPM

WAL-MART STORES EAST, LP,

    Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Walmart Stores East, LP's Motion for Summary Judgment (Doc. 46), Plaintiff Jacqueline Struck's response in opposition (Doc. 58), and Walmart's Reply (Doc. 64). Also here are five motions to strike and/or *Daubert* motions (Doc. 48; Doc. 49; Doc. 50; Doc. 51; Doc. 53) and one motion in limine (Doc. 54). The Court grants summary judgment and moots the other motions.

## BACKGROUND

This case is about a slip-and-fall at Walmart. On September 28, 2015, Struck went with her friend Travis Williams to the Walmart store at 5420

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Juliet Boulevard in Naples, Florida to get dish soap and washcloths for her new apartment. (Doc. 46-1 at 52, 54). As Williams and Struck drove to Walmart, it was "pouring down rain." (Doc. 58-3 at 17). It continued to rain as Williams and Struck arrived at Walmart. (Doc. 58-3 at 17).

After entering the store, Struck and Williams walked through the seasonal area, where Halloween costumes and accessories were displayed. (Doc. 46-1 at 60). Struck had walked through the seasonal area on prior dates and had seen nothing on the floor. (Doc. 46-1 at 57). Before her fall, Struck picked up a slightly wet toy sword from a shelf. (Doc. 46-1 at 7). Struck felt the water on the sword. (Doc. 46-1 at 8). Goofing around, Williams told Struck to put the sword under her arm and pretend she was dying. (Doc. 46-1 at 7). Struck did so, shifting her body weight and falling down. (Doc. 46-1 at 7). Before Struck fell, she was looking at Williams and not at the ground. (Doc. 46-1 at 8).

After the fall, Struck remained seated on the floor momentarily. (Doc. 58-3 at 18). Williams observed Struck was sitting in a puddle of water roughly the size of a car tire. (Doc. 58-3 at 21). Nobody else saw Struck fall, nor did any camera record the incident. Williams described the water as clear in color and not dirty. (Doc. 46-4 at 9).

These pictures were taken after Struck fell:



After the incident, Struck filled out an incident report. (Doc. 58-5). She stated, "my friend and I were testing out Halloween toys when I slipped on water and my leg feels disjointed from my hip. No wet floor sign." (Doc. 58-5). Williams also completed an incident report. He wrote: "[Struck] and I were checking out the Halloween costumes when she unexpectedly slipped on a puddle of water that we didn't see because there was no wet floor sign present. The water appeared to be leaking from the ceiling! Jacqueline fell and her leg twisted…". (Doc. 58-6).

Walmart has procedures in place to ensure nothing is on the floor. Walmart employees are trained that, as they walk through the store, they are to look out for anything on the floor and are to pick up anything on the floor. (Doc. 46-7 at 3). Employees are also trained that, if they see a liquid substance

3

on the floor, they must never ignore it and instead clean it up and report it to their supervisor. (Doc. 58-9 at 24-25). If an employee sees water dripping from the ceiling, she cones off the area. (Doc. 46-7 at 3).

Central to Struck's case is her evidence of roof issues at Walmart in 2015. Relevant is whether Walmart knew, or had reason to know, the roof was leaky in the seasonal area on September 28, 2015. In early 2015, Walmart twice requested repairs to its roof. These repairs occurred in early February and late March. (Doc. 58-8 at 86, 112). On May 18, 2015, Walmart notified its vendor, Cedar Cove, of leaks in the seasonal area. (Doc. 46-8 at 2). These repairs were completed on May 19, 2015. Two days after Struck's incident, Walmart again notified Cedar Cove of leaks in the store. (Doc. 64-1). Cedar Cove repaired these leaks on October 3, 2015. (Doc. 64-1).

Struck filed this negligence action against Walmart in state court in July 2019. Walmart removed the case to this Court.

Struck alleges Walmart was negligent in:

- Failure to exercise ordinary and reasonable care and prudence to have and maintain the premises, including the floors through the merchandise aisles of the store, in a reasonably safe condition for all ordinary, customary, and reasonable uses to which it may be used by business invitees, including, but not limited to, failure to remove accumulated water and/or other transitory foreign substance on the floor prior to her slip and fall;
- Failure to exercise ordinary and reasonable care for the safety of Struck by failing to warn her that the water and/or other transitory foreign substance had been allowed to accumulate on the floor and had not been properly cleaned up prior to Struck's severe slip and fall;

- Failing to exercise ordinary and reasonable care by taking necessary measures due to stop leaks from the roof/ceiling, which were likely to accumulate water on the ground;
- Failing to exercise ordinary and reasonable care under the circumstances that existed on [the date of the fall].

(Doc. 3 at 4, ¶ 21).

The parties dispute what brought about the fall. Walmart contends Struck was negligent and caused her own injury. In its version of events, Struck created the dangerous condition because water dripped from the sword. What's more, Walmart insists it did not know the liquid existed on the floor before Struck's fall. On the other hand, Struck's theory is that water leaking from the roof caused her injury. She points to many issues with Walmart's roof during 2015 and the fact the roof was repaired a few days after her fall.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir.

2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

To start, the parties dispute what brought about the fall. Walmart claims Struck created the condition, while Struck argues the water fell from the ceiling. After review of the evidence, the Court finds there is a factual dispute over who or what created the puddle.

Sitting in diversity over these claims, this Court applies Florida substantive law and federal procedural law. *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). The Court looks to Florida negligence law. As with any Florida negligence claim, Struck must show duty, breach, causation, and damages. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Dist. Ct. App. Fla. 2020).

In a premises liability case, Walmart, as a premises owner, owes Struck, as a business invitee, "a duty to exercise reasonable care to maintain [its] premises in a safe condition." *Encarnacion v. Lifemark Hospitals of Fla.*, 211 So. 3d 275, 278-79 (Dist. Ct. App. Fla. 1997). To show a breach of that duty in a case involving a transitory foreign substance, such as this one, the Florida

legislature has mandated that the plaintiff prove the defendant had notice—actual or constructive—of the dangerous condition.

> Fla. Statute § 768.0755(1) provides:
>
> [I]f a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> > (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business should have known of the condition; or
> >
> > (b) The condition occurred with regularity and was therefore foreseeable.

Section 768.0755 imposes another burden on plaintiffs in slip-and-fall cases to prove "actual or constructive knowledge of the dangerous condition" created by transitory foreign substances.

Walmart argues it is entitled to summary judgment because there is no record evidence that Walmart had actual or constructive knowledge of the water on the floor. Even if, as Struck insists, the water came from a leaky roof, Walmart will prevail on its motion for summary judgment if it can show there is no genuine dispute about whether it knew of the water. The Court examines actual and constructive knowledge.

### A. Actual Knowledge

Struck argues a reasonable juror could conclude Walmart had actual knowledge water was on the floor. "Actual knowledge of a dangerous condition

exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019) (citing *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. Dist. Ct. App. 2001).

Struck insists Walmart knew of what she terms a "failed roof deck." Not so. She mischaracterizes the evidence by overstating the extent of Walmart's roof issues. The evidence reveals roof issues only during 2015 that do not rise to the level of a "failed roof deck." And discovery revealed that any prior leaks were repaired before the incident.

What's more, Struck conflates knowledge of roofing issues with knowledge of the water on the floor. There is no evidence Walmart knew about the water Struck slipped on. Struck has submitted no documentary or testimonial evidence that any Walmart employee knew water or liquid was present on the floor before Struck's fall. Thus, no jury could conclude Walmart had actual knowledge.

### B. Constructive Knowledge

Struck need not prove Walmart had actual knowledge because knowledge may be inferred through constructive knowledge if the conditions are right. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 930 (11th Cir. 2018). Just as with actual knowledge, Walmart argues it lacked constructive knowledge of the water on the floor. In response, Struck argues a reasonable

juror could conclude Walmart knew of the water on the floor because the regularity of prior leaks rendered this leak foreseeable.

Section 768.0755(1) places the burden to prove constructive knowledge on a plaintiff. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So.3d 126, 128 (Fla. Dist. Ct. App. 2020). The plaintiff need not prove constructive knowledge at the summary judgment stage, but, if the defendant shows there are no disputed factual issues about its constructive knowledge, the burden shifts to the plaintiff to offer counter-evidence sufficient to reveal a genuine issue. *Id.* at 129. The mere presence of a liquid on the floor cannot establish constructive knowledge. *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 (Fla. Dist. Ct. App. 2011). The record must contain additional facts to support a permissible inference about how long the liquid was on the floor. *Palavicini v. Wal-Mart Stores, E., LP*, 787 F. App'x. 1007, 1013 (11th Cir. 2019).

Nobody knows how long the water was on the floor. Nor does any witness know where the water came from. And there is no evidence the alleged problems with Walmart's roof led to a water puddle on the floor that posed a risk to Walmart's costumers.

That said, Struck claims evidence of recurring water puddles on rainy days will satisfy the constructive notice requirement of a negligence claim under Florida law. In support of her position, Struck cites *Britt v. Wal-Mart Stores E., LP*, No. 18-61323-CIV, 2019 WL 3890458 (S.D. Fla. May 13, 2019),

*Doudeau v. Target Corp.*, 572 Fed. Appx. 970 (11th Cir. 2014), and *Collias v. Gateway Academy of Walton County, Inc.*, 2021 WL 79775 (Dist. Ct. Fla. App. 2021). The Court does not find these cases on point.

In *Britt*, the Southern District denied a motion for summary judgment when a plaintiff slipped and fell on a liquid substance that contained "various dark streaks and spots through the area of the liquid." The conclusion depended on two sources of circumstantial evidence establishing constructive notice. First, the spill had many lines and marks through it, supporting the inference that a long time had passed since the spill. *Britt*, 2019 WL 3890458, at *3. Second, the plaintiff provided testimony from Walmart employees who said on rainy days customers often shake umbrellas in the store and water can drip from carts or clothing. *Id.* Here, however, there are no dark streaks or spots marking the passage of time, nor testimony that patrons often shook umbrellas in the seasonal area. The water puddle was clear and there is no testimony that water often accumulates in the seasonal area on rainy days. The Court is not persuaded by this case.

In *Doudeau*, the Eleventh Circuit overturned the District Court's award of summary judgment to Defendant Target. The crucial evidence there was testimony from a Target employee that "water must have been tracked in from outside" and that the area "was a known slip and fall area when it rained." *Doudeau*, 572 Fed. Appx. at 972. This case does not apply because there is no

10

evidence the water came from the outside or that the seasonal area was a known slip and fall area. The Court also fails to see how *Collins* relates. *Collins* did not involve a transitory substance, nor did it deal with issues of actual and constructive notice.

As Walmart correctly points out, it is typical for Courts to grant summary judgment in a Defendant's favor when a Plaintiff fails to adduce evidence on the notice issue. A plethora of cases support this point. *See, e.g.*, *Borroto v. Wal-Mart Stores East, LP*, No. 2:19-cv-00356-SPC-NPM, 2020 WL 6591193 (M.D. Fla. Nov. 10, 2020); *Nieves v. Walmart Stores, East, LP,* No. 2:19-cv-00474-JLB-NPM, 2020 WL 6161474 (M.D. Fla. Oct. 21, 2020); *Espinoza v. Target Corporation*, 2021 WL 164507 (11th Cir. 2021) (affirming district court's grant of summary judgment in a transitory substance case when a jury could only speculate about how long the puddle was on the floor); *Berbridge v. Sam's East, Inc.*, 728 Fed.Appx. 929 (11th Cir. 2018) (affirming district court's grant of summary judgment in a transitory substance case in which plaintiff slipped and fell because there was no triable issue as to whether substance was on the floor enough time to create constructive notice).

What's more, a recent Eleventh Circuit case is instructive. In *Palavicini v. Wal-Mart Stores East, LP*, 787 Fed.Appx. 1007 (11th Cir. 2019), Plaintiff slipped and fell on liquid on the floor of a Walmart store. She alleged the air conditioning vent above the incident area had been leaking for one week before

the incident. *Id.* at 1009. Just as Struck does here, Palavicini argued the air conditioning unit above the area where she fell often leaked, which would place Walmart on constructive notice of the leak on the date of the incident. *Id.* at 1014. To support her theory, Palavicini provided testimony and sworn affidavits from Walmart employees conveying the air conditioning unit had leaked in the past, and a work order showing that a leak in the air conditioning unit was fixed two months before the incident. *Id.* Yet the Eleventh Circuit affirmed the district court's award of summary judgment to Walmart. The Eleventh Circuit reasoned that none of this evidence was specific enough to support the plaintiff's "regularity" argument because: (1) it was unclear when, where, and how often the prior leaks occurred; (2) the affidavit described an inspection of the air conditioning unit four years before the incident; and (3) one work order from two months ago could not show that the unit leaked with regularity. *Id.* at 1014-15.

Struck presents no more evidence than Palavicini bearing on constructive knowledge. After the close of discovery, the circumstantial evidence relevant to constructive notice consists of two repairs to Walmart's roof in early 2015, a repair to the seasonal area's roof in May 2015, and the large size of the puddle. At the time of the fall, there were no outstanding reports of roof issues. Nor is there any evidence the roof issues had caused large puddles to form. It does not matter if the roof was repaired a few days

12

after the incident if Walmart had no reason to believe the seasonal area roof would leak and allow an accumulation of water on the floor. Based on the Eleventh Circuit's reasoning in *Pavalicini*, this matter cannot survive summary judgment.

To defeat Walmart's motion for summary judgment, Struck must present some credible evidence that Walmart knew that the water was on the floor. Yet Struck presents none. Given this conclusion, it is unnecessary to address the arguments on the motions to strike and/or *Daubert* motions and the motion in limine. See *White v. W.G. Parcel B. LLC*, 2016 WL 9525667 (M.D. Fla. Nov. 29, 106) (denying as moot motion to strike and motion in limine when granting summary judgment); *Miller v. City of Fort Myers*, 424 F. Supp. 3d 1136, 1142-43 (M.D. Fla. 2020) ("[C]ourts consider *Daubert* motions only as needed to resolve summary judgment") (cleaned up).

## CONCLUSION

This case presents a situation in which there is no evidence Walmart knew the water puddle was on the floor. Whether or not a leaky roof contributed to Struck's fall, there is no evidence that Walmart knew or should have known of water accumulation in the seasonal area the date of the incident. In such a situation, there is no genuine issue of material fact for a trial on actual or constructive knowledge. Summary judgment for Walmart must be granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's motion for Summary Judgment (Doc. 46) is **GRANTED**.

2. Defendant's motions to Strike and/or *Daubert* motions (Doc. 48; Doc. 49; Doc. 50; Doc. 51; Doc. 53) and motion in limine (Doc. 54) are **DENIED** as moot.

3. The clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 3, 2021.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record